**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| IMRAN MUSTAFA, | ) | |
|    Plaintiff, | ) | |
| | ) | |
|    v. | ) | Case No. 1:17-cv-1357 |
| | ) | |
| ANDREI IANCU, | ) | |
|    Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

At issue in this Title VII[1] employment discrimination case is defendant's Motion to Dismiss plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. In the Amended Complaint, plaintiff asserts one hostile work environment claim against defendant, alleging that defendant discriminated against plaintiff on the basis of his race (South Asian), national origin (Indian), and religion (Muslim). Defendant argues that the Amended Complaint should be dismissed:

> (i) because plaintiff raised several of the allegedly discriminatory actions that form the basis of his hostile work environment claim as part of a union grievance process which plaintiff then failed to exhaust,
>
> (ii) because several of the allegedly discriminatory actions are untimely, and
>
> (iii) because the allegedly discriminatory actions are not sufficiently severe or pervasive to state a claim for hostile work environment.

Plaintiff opposes defendant's motion, arguing (i) that the untimeliness of the allegedly discriminatory actions must be overlooked because the conduct is part of a continuing violation and (ii) that defendant's conduct, as a whole, is sufficiently severe and pervasive to state a hostile

---

[1] 42 U.S.C. § 2000e, *et seq.*

1

work environment claim. These issues have been fully briefed and argued and are now ripe for disposition.

**I.**

Before reciting the pertinent facts, it is important to identify the proper source of those facts. First, as the parties agree and as settled precedent requires, the facts recited here are taken chiefly from the Amended Complaint's factual allegations, which must be accepted as true at this stage. *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008) (noting that at the motion to dismiss stage, "we must accept plaintiffs' factual allegations as true"). Defendants have also sought to have additional facts considered by attaching various exhibits to the motion to dismiss.[2] For the reasons described below, these documents are appropriately considered at this stage.

Where, as here, a party challenges subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., the Fourth Circuit has made clear that the plaintiff's jurisdictional allegations are "mere evidence" and evidence outside the pleadings may properly be considered without converting the motion to dismiss into a motion for summary judgment. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Accordingly, it is appropriate to consider exhibit 2 of defendant's motion to dismiss, which includes the records from plaintiff's union grievance proceedings. *See* Doc. 13 Ex. 2.

---

[2] Defendants' additional documents include three exhibits attached to defendant's Motion to Dismiss the original complaint (Doc. 13), each of which contains a declaration and several attachments. Specifically, exhibit 1 contains plaintiff's Equal Employment Opportunity ("EEO") Complaint, the Office of Equal Employment Opportunity and Diversity ("OEEOD") final agency decision, the Equal Employment Opportunity Commission ("EEOC") decision, and the EEOC decision on plaintiff's request for reconsideration. Exhibit 2 contains documents associated with plaintiff's union grievance proceedings, including the union's grievances on plaintiff's behalf, the United States Patent & Trademark Office's ("PTO") informal decision, and the PTO's formal decision. Finally, exhibit 3 is a copy of the EEO counselor's report from her contact with plaintiff.

With respect to a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., settled circuit authority permits courts to consider external documents when they "are integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quotation marks and brackets omitted).[3] Here, the EEO documents attached as exhibits 1 and 3 to defendant's motion to dismiss are integral to, and explicitly relied on, in the Amended Complaint as the Amended Complaint states that plaintiff "timely contacted an EEO counselor and . . . timely filed a formal EEO complaint of discrimination based on his race, national origin and religion … ." Am. Compl. ¶¶ 9-10. Nor does plaintiff challenge the authenticity of the EEO documents attached to defendant's motion to dismiss. Accordingly, it is also appropriate to consider the documents defendant attached in exhibits 1 and 3, including plaintiff's EEOC complaint and accompanying attachments, the various agency actions, and the EEO counselor's inquiry report. In sum, all the documents attached to defendant's Motion to Dismiss the original complaint are appropriately considered, in accordance with settled law in this circuit, without converting this motion to a Rule 56 motion.

## II.

Plaintiff, Imran Mustafa, is a resident of Maryland and a former patent examiner at the PTO where he was a member of the Patent Office Professional Association ("POPA") bargaining unit. Plaintiff identifies his race as South Asian, his national origin as Indian, and his religion as Muslim. Defendant, Andrei Iancu, is the head of the PTO, the agency responsible for the alleged discrimination.

---

[3] *See also Occupy Columbia v. Haley,* 738 F.3d 107, 116 (4th Cir. 2013).

The Amended Complaint alleges that plaintiff was employed as a patent examiner at the PTO for approximately 10 years. Throughout his time at the PTO, plaintiff received positive comments on his performance and high ratings on performance evaluations. On April 20, 2015, plaintiff received and signed a performance evaluation providing plaintiff with a "Fully Successful" rating. Specifically, plaintiff received a "Fully Successful" rating for his Quality, a "Commendable" rating for his Productivity, a "Fully Successful" rating for his Docket Management, and an "Outstanding" rating for his Stakeholder Interaction.[4] On April 27, 2015, shortly before plaintiff left for a two-week vacation to India, plaintiff was provided with a second performance evaluation which rated his performance as "Marginal," and changed his Docket Management rating to "Marginal." Plaintiff refused to sign this new performance evaluation.

On April 30, 2015, before boarding his flight to India, plaintiff received a call from his father informing plaintiff that plaintiff's supervisor was trying to get in touch with plaintiff about an emergency at work. When plaintiff called his supervisor, plaintiff's supervisor told plaintiff that plaintiff needed to sign the new performance evaluation or else plaintiff would have an embarrassment upon his return from India. Although the Amended Complaint does not specify what happened upon plaintiff's return from India, the Amended Complaint does allege that immediately after plaintiff refused to sign his performance evaluation, plaintiff was denied a deserved Within Grade Increase ("WGI").

The Amended Complaint further alleges that shortly thereafter, plaintiff gave a presentation and Khoi Tran ("Tran"), a supervisor who was involved in the denial of plaintiff's WGI, argued with plaintiff during his presentation. After the presentation, Tran asked to meet with plaintiff. During the meeting, the Amended Complaint alleges that Tran named several

---

[4] Quality, Productivity, Docket Management, and Stakeholder Interaction are categories on which patent examiners are rated, and there is no dispute between the parties as to their meaning.

4

employees of plaintiff's same national origin and race and stated "you people like to do your work in a certain way." Am. Compl. ¶ 24.

On July 7, 2015, pursuant to Article 11 of the collective bargaining agreement ("CBA") between POPA and the PTO, POPA filed an informal grievance with the PTO on behalf of plaintiff, arguing that the PTO wrongfully denied plaintiff's WGI. Specifically, POPA requested that the PTO reinstate the WGI as of April 2015.

Around the same time, in the summer of 2015, the PTO issued a vacancy announcement for a Supervisory Patent Examiner position in plaintiff's department. Plaintiff applied for the position and was interviewed in August 2015. On August 26, 2015, plaintiff was not selected for the position. The Amended Complaint alleges that this occurred despite the fact that plaintiff was the most qualified and experienced candidate of all the applicants. Indeed, the candidate selected for the supervisory position, who is not South Asian, Indian, or Muslim, did not have the same specialized experience or Master's degree as plaintiff.

On October 6, 2015, plaintiff met with PTO management and POPA representatives to discuss his July 7, 2015 informal grievance; at this meeting, plaintiff's POPA representatives also alleged that plaintiff's supervisor created a hostile work environment when he contacted plaintiff's father to urge plaintiff to sign his performance evaluation. One month later, on November 15, 2015, the PTO denied in part and granted in part plaintiff's informal grievance, rejecting plaintiff's request for a WGI and determining that plaintiff's supervisor's actions were not sufficiently severe to constitute a hostile work environment. Thereafter, on March 31, 2016, POPA filed a formal grievance on plaintiff's behalf, arguing again that plaintiff was wrongfully denied a WGI and additionally disputing plaintiff's marginal rating on his new performance evaluation.

On May 19, 2016, before the PTO could issue a final decision on plaintiff's formal grievance,[5] plaintiff contacted a counselor at the PTO Office of Equal Employment Opportunity and Diversity ("OEEOD") and alleged he was discriminated against when defendant issued an unsatisfactory performance rating and denied him a WGI. Subsequently on June 7, 2016, the PTO offered plaintiff a settlement agreement related to his EEO claims of discrimination. The Amended Complaint alleges that defendant pressured plaintiff to sign the settlement agreement waiving his future EEO rights. Plaintiff ultimately refused to sign the agreement, and on August 30, 2016, plaintiff filed a formal complaint of employment discrimination against the PTO. In his EEO complaint, plaintiff again alleged that defendant discriminated against plaintiff by issuing an unsatisfactory performance rating and denying plaintiff a WGI. The EEO complaint additionally alleged that plaintiff was discriminated against when the PTO declined to select plaintiff for the supervisory patent examiner position and pressured plaintiff to sign a settlement agreement.

On September 29, 2016, the PTO issued a final agency action dismissing plaintiff's EEO complaint. Thereafter, on October 22, 2016, plaintiff appealed the PTO's final agency decision to the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC affirmed the PTO's decision on January 13, 2017 and denied plaintiff's request for reconsideration on May 4, 2017.

Plaintiff filed the original complaint in this action on August 7, 2017, asserting claims of race, national origin, and religious discrimination in violation of Title VII. An Order issued on March 9, 2018, dismissing with prejudice plaintiff's discrimination claims based on the denial of the WGI, the marginal performance evaluation, the call to plaintiff's father, and plaintiff's non-

---

[5] The PTO ultimately denied plaintiff's formal grievance on June 15, 2016. Neither plaintiff nor POPA, as permitted by the CBA, filed any exceptions to this decision or initiated arbitration following the PTO's decision.

selection for a supervisory position. *See Mustafa v. Iancu*, No. 1:17-cv-1357, at *1 (E.D. Va. Mar. 9, 2018) (Order). The claims were dismissed with prejudice (i) because plaintiff pursued, and did not exhaust, negotiated CBA grievance procedures with respect to his first three claims and (ii) because plaintiff's claim based on his non-selection for a supervisory role was untimely. Plaintiff's hostile work environment claim was dismissed without prejudice and with leave to amend. *Id.* On March 19, 2018, plaintiff filed the Amended Complaint, asserting one hostile work environment claim and alleging as evidence of the hostile work environment (i) the marginal performance evaluation, (ii) the call to plaintiff's father, (iii) the denial of the WGI, (iv) Tran's "you people" comment, (v) the non-selection for a supervisory position, and (vi) the pressure to settle plaintiff's EEO claim.

Defendant filed the Motion to Dismiss at issue here on April 2, 2018. In his Motion to Dismiss, defendant contends that (i) the marginal performance evaluation, (ii) plaintiff's supervisor's pressure to sign the performance evaluation, and (iii) the denial of the WGI, and must be excluded from plaintiff's hostile work environment claim. Specifically, defendant argues there is no subject matter jurisdiction over these matters because plaintiff elected to pursue these matters via negotiated CBA grievance procedures, and not statutory procedures. Defendant also argues that plaintiff's non-selection for the supervisory position cannot be considered as evidence of a hostile work environment because plaintiff did not contact an EEO counselor within 45 days of plaintiff's non-selection. Finally, defendant contends that plaintiff's hostile work environment claim must be dismissed for failure to state a claim. Plaintiff opposes defendant's motion, arguing that even assuming (i) that plaintiff elected to raise some of defendant's harassing conduct as part of the union grievance process and (ii) that other allegedly harassing conduct is time-barred, these actions may still be considered as evidence in support of

plaintiff's hostile work environment claim. Plaintiff also contends that defendant's actions were sufficiently severe and pervasive to state a plausible hostile work environment claim and to survive a motion to dismiss.

### III.

Where, as here, a defendant argues that the jurisdictional allegations in a complaint are not true and challenges subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., the plaintiff bears the burden of establishing subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768. To determine whether plaintiff has sufficiently proved subject matter jurisdiction, courts "apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* The moving party prevails if "the material jurisdictional facts are not in dispute[,]" and as such, the "undisputed facts establish a lack of subject matter jurisdiction[.]" *Id.*

The material jurisdictional facts in this case are not in dispute and establish a lack of jurisdiction with respect to (i) defendant's issuance of a marginal performance evaluation, (ii) plaintiff's supervisor's pressure to sign the performance evaluation, and (iii) the denial of the WGI. The Civil Service Reform Act of 1978 ("CSRA") provides, in relevant part, that "[a]n aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d).[6] An employee is deemed to have elected either the statutory or negotiated procedure when "the employee timely initiates an action under the applicable statutory procedure or timely

---

[6] The statute defines prohibited personnel practices to include alleged discrimination on the basis of race, color, religion, sex or national origin as prohibited by Title VII. *See* 5 U.S.C. § 2302(b)(1)(A).

8

files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first." *Id.* Moreover, once an employee makes an election, he must exhaust that remedy before filing suit in federal court. *See Vinieratos v. United States*, 939 F.2d 762, 772 (9th Cir. 1991) ("The law requires an aggrieved federal employee to elect one exclusive administrative remedy and to exhaust whatever remedy he chooses.").[7] If the employee has not exhausted his chosen procedure, there is no subject matter jurisdiction over the claims. *See Laber v. Harvey*, 488 F.3d 404, 414 (4th Cir. 2006) ("All employees, private-sector or federal, alleging such discrimination must [] exhaust their administrative remedies before exercising this right [to sue under Title VII]").[8]

Here, it is undisputed that plaintiff elected to challenge three of defendant's actions through the negotiated CBA grievance procedure, and not Title VII statutory procedures. Specifically, the record discloses that POPA asserted grievances on plaintiff's behalf challenging (i) the marginal performance evaluation, (ii) plaintiff's supervisor's pressure to sign the performance evaluation, and (iii) the denial of the WGI in late 2015 and early 2016. On July 7, 2015, POPA filed an informal grievance on plaintiff's behalf with respect to the denial of the WGI and plaintiff's supervisor's pressure. On March 31, 2016, following the denial of plaintiff's informal grievance, POPA filed a formal grievance on plaintiff's behalf with respect to the denial of the WGI and the marginal performance evaluation. Plaintiff followed all of these

---

[7] Although the Fourth Circuit has not addressed this issue, other courts in this circuit have uniformly agreed that a party who chooses a union grievance process must exhaust that remedy before he or she can file suit in federal court. *See Price v. Lynch*, 2015 WL 5561219, at *7 (E.D. Va. Sept. 17, 2015) ("[A] federal employee pursuing a claim under either the statutory procedure or the negotiated grievance procedure must exhaust his or her administrative remedies before raising that claim in federal court"); *Zuzul v. McDonald*, 98 F. Supp. 3d 852, 862 (M.D.N.C. 2015); *Wilson v. Hagel*, 2014 WL 3738530, at *3–5 (E.D.N.C. July 29, 2014) (holding that failure to exhaust administrative remedies under 5 U.S.C. § 7121(d) is a jurisdictional inquiry); *see also Frasure v. Principi*, 367 F. Supp. 2d 245, 253 (D. Conn. 2005) ("Whichever route the employee chooses [under § 7121(d) ], she must then exhaust that administrative remedy before pursuing her claim in court.")

[8] *See also Price*, 2015 WL 5561219, at *8; *Zuzul*, 98 F. Supp. 3d at 863; *Smith v. Jackson*, 539 F. Supp. 2d 116, 131-32 (D.D.C. 2008); *Rosell v. Wood*, 357 F. Supp. 2d 123, 131-32 (D.D.C. 2004); *Facha v. Cisneros*, 914 F. Supp. 1142, 1153 (E.D. Pa. 1996).

procedures well before she contacted the OEEOD in May 2016. As such, because plaintiff timely filed a grievance in writing, in accordance with the provisions of the parties' negotiated CBA grievance procedure, plaintiff exercised his option to raise these matters under the negotiated CBA grievance procedure and cannot now pursue these matters through statutory procedures. *See* 5 U.S.C. § 7121(d).

Moreover, because plaintiff elected to pursue these matters via the negotiated CBA grievance procedure, he was required to exhaust those procedures before bringing suit in federal court. Article 11 of the CBA provides that a written decision in response to a formal grievance may be appealed to binding arbitration by POPA or by the PTO. CBA at 35.[9] The undisputed record reflects that neither plaintiff nor POPA filed any exceptions to, or initiated arbitration following, the PTO's decision on plaintiff's formal grievance. Instead, plaintiff abandoned the negotiated CBA grievance procedure one month before a PTO decision issued and attempted impermissibly to switch to the statutory procedure by contacting the OEEOD. Because plaintiff did not exhaust the negotiated CBA grievance procedures he elected to pursue, there is no subject matter jurisdiction over (i) the issuance of a marginal performance evaluation, (ii) plaintiff's supervisor's pressure to sign the performance evaluation, and (iii) the denial of the WGI.

Plaintiff adduces no evidence to contradict defendants' arguments with respect to plaintiff's negotiated CBA grievance or to establish subject matter jurisdiction; rather, plaintiff argues that defendant's actions can still be considered as evidence in support of plaintiff's hostile work environment claim because that precise legal theory was not raised during the grievance process. This argument fails because it misunderstands the nature of the CSRA election

---

[9] *See also Moreno v. McHugh*, 2011 WL 2791240, at *9 (D. Md. Jul. 14, 2011) (citing *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995)).

requirements. As described above, the CSRA provides that "an aggrieved employee . . . may raise the *matter* under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d) (emphasis added). Courts have routinely interpreted "matter" under the CSRA to encompass a defendant's "underlying action[s]" or the "topics raised" in the grievance procedure, and not the specific legal claims asserted or legal theories advanced. *Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999) (noting that "courts have tended to construe the term 'matter' to encompass more than a legal claim and instead to encompass the 'underlying action' . . . or the 'topics raised[.]'").[10] Accordingly, the fact that plaintiff did not package defendant's actions as part of a hostile work environment claim during the negotiated CBA grievance procedure does not alter the conclusion that plaintiff elected to pursue this negotiated CBA grievance process with respect to the underlying employment actions. Because plaintiff elected the negotiated CBA grievance procedures and did not then exhaust those procedures, he may not now pursue the statutory Title VII process.

In sum, by timely filing a grievance before pursuing his statutory remedies, plaintiff elected to pursue negotiated CBA grievance procedures with respect to three matters: (i) the issuance of a marginal performance evaluation, (ii) plaintiff's supervisor's pressure to sign the

---

[10] *See also Redmon v. Mineta*, 243 F. App'x 920, 924 (6th Cir. 2007) ("The fact that [the plaintiff] advanced different legal theories to challenge these actions in the union grievance and EEO complaint is inconsequential" in considering whether the grievance and the complaint concerned the same matters); *Giove v. U.S. Dep't of Transp.*, 178 F. App'x 814, 818 (10th Cir. 2006) (noting that the term "matter" in the CSRA "refer[s] to the underlying government action which precipitated the complaint[,]" not the legal theory employed to challenge the government action); *Bonner v. Merit Sys. Prot. Bd.*, 781 F.2d 202, 204 (Fed. Cir. 1986) (holding that "the term 'matter' [in the CSRA] embraces the underlying action"); *Zuzul*, 98 F. Supp. 3d at 861 (noting that "matter" under the CSRA refers to "the underlying employment action"); *Smith*, 539 F. Supp. 2d at 131-32 (holding that a grievance and an EEO complaint involve the "same matter" where they are both rooted in plaintiff's complaints about the same underlying employment actions); *Rosell*, 357 F. Supp. at 130 (holding that a grievance and an EEO complaint concerned the same matter under CSRA where both documents referenced the same three agency actions, even though the legal theory and relief sought were different); *Facha*, 914 F. Supp. 2d at 1149 (holding that if the plaintiff "raised a topic in both [the union grievance and the EEO complaint], or if the arbitrators assigned to handle the grievance would necessarily have needed to inquire into a topic in discharging their duties, then § 7121(d) bars her from raising that same topic in her subsequent EEO complaint"); *Macy v. Dalton*, 853 F. Supp. 350, 353 (E.D. Cal. 1994) ("[I]f an employee chooses the grievance route, she may not thereafter file an EEO complaint regardless of whether her grievance alleged unlawful discrimination.").

performance evaluation, and (iii) the denial of plaintiff's WGI. Having elected those negotiated CBA grievance procedures, plaintiff then failed to exhaust, and abandoned the grievance procedures to take advantage of statutory procedures. Because plaintiff failed to exhaust his elected CBA grievance procedures, there is no subject matter jurisdiction over these matters, and they cannot be considered, even as evidence in support of plaintiff's hostile work environment claim.

## IV.

Defendant next argues that the allegations related to plaintiff's non-selection for the supervisory patent examiner position must be excluded from plaintiff's hostile work environment claim because plaintiff did not contact an EEO counselor within 45 days of his non-selection for the supervisory position, as required by 29 C.F.R. § 1614.105(a)(1). Plaintiff concedes that any discrete discrimination claim based on his non-selection for a supervisory role is time-barred, but argues that his non-selection can be considered as evidence of plaintiff's hostile work environment claim. Specifically, plaintiff contends that because plaintiff timely filed his claim based on the PTO's pressure to settle the EEO complaint, plaintiff's non-selection for a supervisory role, although not timely itself, can be considered as a part of a continuing hostile work environment. But Supreme Court and circuit precedent makes clear that plaintiff cannot bootstrap his non-selection for a supervisory role to an unrelated hostile work environment claim, and as such, evidence of plaintiff's non-selection cannot be considered as part of plaintiff's hostile work environment claim.

The Supreme Court has made clear "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R&R Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). By contrast, "[h]ostile environment

claims . . . are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 115. For this reason, hostile work environment claims are subject to a different limitations rule. Specifically, as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

But this does not end the inquiry because incidents can only qualify as a part of the same hostile work environment claim if they are adequately linked—that is, if the incidents "involve[] the same type of employment actions, occur[] relatively frequently, and [are] perpetrated by the same managers." *Id.* at 120-21.[11] An incident that "ha[s] no relation to the [other] acts" cannot be considered as part of the hostile work environment claim. *Morgan*, 536 U.S. at 118. In this regard, the Fourth Circuit has noted that plaintiffs may not bootstrap discrete and unrelated discriminatory acts into hostile work environment claims to save untimely or unexhausted claims. *See Malghan v. Evans*, 118 F. App'x 731, 734 (4th Cir. 2004) ("[B]ecause [the

---

[11] *Id.* at 118 (excluding any incident that "had no relation to the [other] acts . . . or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim"); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 223 (4th Cir. 2016) ("So long as the act is part of the pattern of discriminatory treatment against the employee, then that act should be sufficient for purposes of the continuing-violation doctrine, even if the act would otherwise qualify as a discrete act that is independently actionable."); *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011) ("The *Morgan* principle is not, however, an open sesame to recovery for time-barred violations. Both incidents barred by the statute of limitations and ones not barred can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked into a coherent hostile environment claim[.]"); *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 951 (8th Cir. 2011) ("[A]cts before and after the limitations period [that are] so similar in nature, frequency, and severity . . . must be considered to be part and parcel of the hostile work environment… ." (alterations and emphasis in original)); *McGullam v. Cedar Graphics Inc.*, 609 F.3d 70, 78 (2d Cir. 2010) (noting that comment could not be considered as part of hostile work environment claim because it "had no relation to the" harassment that formed the basis for the hostile work environment claim and occurred nearly one year after other conduct); *Wheaton v. N. Oakland Med. Ctr.*, 130 F. App'x 773, 787 (6th Cir. 2005) (holding that *Morgan* requires inquiry into whether incidents "occurring outside the statutory period are sufficiently related to those incidents occurring within the statutory period as to form one continuous hostile work environment.").

13

plaintiff's] failure to select and discharge claims were discrete acts, he cannot salvage them by labeling them part of a hostile work environment claim.").[12]

Here, plaintiff's non-selection for a supervisory role was a discrete incident that is unrelated to the allegations associated with plaintiff's hostile work environment claim. To begin with, the non-selection involves a type of employment action different from the allegations associated with plaintiff's hostile work environment claim, namely the allegation that Tran made a disparaging comment to plaintiff and the allegation that the PTO pressured plaintiff to settle his EEO claim. Moreover, the incidents were separated in time and did not occur frequently—the comment was made around April 2015, plaintiff was not selected for a supervisory position several months later in August 2015, and defendant did not pressure plaintiff to settle his EEO claim until almost one year later in June 2016. Finally, the allegedly harassing conduct was perpetrated by different managers. Although the Amended Complaint alleges that Tran, the supervisor who made the "you people" comment, was involved in plaintiff's non-selection, the Amended Complaint does not allege that those same supervisors pressured plaintiff to settle his EEO complaint.

In sum, because plaintiff's non-selection for a supervisory role is unrelated to the allegations associated with plaintiff's hostile work environment claim, the untimeliness of plaintiff's non-selection claim cannot be rescued and plaintiff's non-selection cannot be considered as evidence in support of plaintiff's hostile work environment claim.

## V.

Given that (i) the issuance of the marginal performance evaluation, (ii) the pressure to sign the performance evaluation, (iii) the denial of the WGI, and (iv) the non-selection for a

---

[12] *See also Edwards v. Murphy-Brown LLC*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011) (noting that a plaintiff may not "make an earlier discrete discriminatory action, for which time has expired, timely once again by 'bootstrapping' it to a timely charge, even if both incidents are related").

supervisory role cannot be considered as part of plaintiff's hostile work environment claim, plaintiff's hostile work environment claim is properly based only on (i) Tran's "you people" comment and (ii) defendant's pressuring plaintiff to waive his EEO rights in June 2016. Because these actions are not sufficiently severe or pervasive to state a plausible hostile work environment claim, plaintiff's claim must be dismissed.

Title VII provides a cause of action to an employee when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To state a hostile work environment claim, a plaintiff must allege that the harassment "was (1) unwelcome, (2) based on [his protected characteristic, such as race, national origin, or religion], (3) sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive atmosphere, and (4) imputable to [the defendant]." *E.E.O.C. v. Cent. Wholesalers, Inc.,* 573 F.3d 167, 175 (4th Cir. 2009). Fourth Circuit precedent instructs courts evaluating whether a complaint has stated a plausible hostile work environment claim to consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Okoli v. City of Balt.*, 648 F.3d 216, 222 (4th Cir. 2011). Importantly, the Fourth Circuit has made clear that "Title VII does not create a general civility code in the workplace"[13] and "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's]

---

[13] *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (internal quotation marks omitted).

15

supervisor, are not actionable under Title VII." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations and quotation marks omitted).

These principles applied here point persuasively to the conclusion that plaintiff has failed to state a valid hostile work environment claim. Simply put, the Amended Complaint does not allege facts suggesting that defendant's alleged harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment. To begin with, the allegedly harassing conduct was not frequent or pervasive. Specifically plaintiff's hostile work environment is based on two discrete incidents of alleged harassment: (i) Tran's comment that "you people like to do your work in a certain way" in approximately April 2015, and (ii) defendant's pressuring plaintiff to waive his EEO rights in June 2016. Courts have routinely noted that where, as here, the alleged harassment involves isolated or scattered incidents occurring over the course of several months, the conduct is not pervasive enough to state a claim for hostile work environment. *See Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (holding that a supervisor's alleged harassment of former employee was not sufficiently severe or pervasive to create an objectively hostile work environment because "[a] handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage" (quoting *Baskerville v. Culligan Internat'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995)).[14]

Nor is the harassing conduct alleged here sufficiently severe to state a plausible hostile work environment claim. Plaintiff's complaint concerning the PTO's pressuring plaintiff to

---

[14] *See also Sunbelt Rentals, Inc.*, 521 F.3d at 318 ("[N]o employer can lightly be held liable for single or scattered incidents[.]"); *Taylor v. Republic Servs., Inc.*, 968 F. Supp. 2d 768, 793 (E.D. Va. 2013) ("[T]hree discrete acts over a three-year period, do not reach the level of 'severe' or 'pervasive' conduct that is required by the Supreme Court to state a claim for hostile-work-environment discrimination."); *Jackson v. State of Maryland*, 171 F. Supp. 2d 532, 542 (D. Md. 2001) (holding that a "fair number of incidents that might seem suspicious" but alleged to have occurred sporadically over a period of almost four years was not sufficiently severe to alter the terms and conditions of plaintiff's employment). *Compare Jennings v. Univ. of N.C.*, 482 F.3d 686, 697-98 (4th Cir. 2007) (holding that harassing conduct was sufficiently pervasive to state a hostile work environment claim where the conduct was "persistent" and took place "almost every day or every other day").

settle his EEO claim essentially amounts to a disagreement with defendant's evaluation of plaintiff's performance and defendant's conduct during the EEO process. The Fourth Circuit has made clear that routine personnel disputes or differences of opinion such as these are not sufficiently severe to state a plausible hostile work environment claim. *See Sunbelt Rentals, Inc.*, 521 F.3d at 315-16 ("[A] routine difference of opinion and personality conflict with [one's] supervisor . . . [is] not actionable under Title VII."). Moreover, with respect to Tran's "you people" comment, the Fourth Circuit has made clear that an "insulting or demeaning remark does not create a federal cause of action . . . merely because the 'victim' of the remark happens to belong to a class protected by Title VII." *Hartsell v. Duplex Prods. Inc.*, 123 F.3d 766, 722 (4th Cir. 1997). In this regard, the Fourth Circuit has distinguished between "mere offensive utterances" and comments that are "physically threatening or humiliating." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000). Tran's comment, while potentially offensive, was neither physically threatening nor humiliating. And courts in this circuit have routinely dismissed hostile work environment claims based on far more egregious comments involving racial epithets and slurs.[15]

In sum, the Amended Complaint does not allege conduct that is sufficiently severe or pervasive as to alter the conditions of defendant's employment. As such, plaintiff has failed to state facts that support a plausible claim for relief, and plaintiff's hostile work environment claim

---

[15] *See e.g.*, *See Hartsell*, 123 F.3d at 772 (holding that numerous comments such as "we've made every female in the office cry like a baby" and "fetch your husband's slippers like a good wife," and references to employees as "slaves" and "little people" were not sufficiently severe to state a hostile work environment claim); *Tims v. Carolinas Healthcare Sys.*, 983 F. Supp. 2d 675, 680-81 (W.D.N.C. 2013) (granting motion to dismiss where plaintiff alleged supervisor referred to her as "you people" and "y'all blacks" because "isolated comments do not rise to the level of severity necessary to alter the terms and conditions of employment"); *Roberts v. Fairfax Cnty. Pub. Sch.*, 858 F. Supp. 2d 605, 609-11 (E.D. Va. 2012) (holding that supervisor's use of highly offensive racial slur was not sufficiently severe or pervasive to support hostile work environment claim); *Murphy v. Danzig*, 64 F. Supp. 2d 519, 522 (E.D.N.C. 1999) (granting motion to dismiss hostile work environment claim where supervisor allegedly told the plaintiff "you're black" and "you people are used to being targeted" because that comment was a "mere offensive utterance that occurred once and did not unreasonably interfere with [the plaintiff's] ability to work").

must be dismissed.[16] Plaintiff, however, is entitled to amend his complaint once more to allege any additional facts that might support a hostile work environment claim.

## VI.

In sum, plaintiff's attempts to recast his allegations as a hostile work environment claim do not save his Amended Complaint. Plaintiff's claims based on (i) the issuance of the marginal performance evaluation, (ii) the pressure to sign the evaluation, and (ii) the denial of the WGI cannot be considered as evidence in support of a hostile work environment claim because plaintiff elected to pursue these matters via negotiated grievance, and not statutory procedures. Moreover, plaintiff's untimely claim based on his non-selection for a supervisory role cannot be considered as evidence of a hostile work environment because plaintiff's non-selection is not sufficiently related to the harassment alleged in plaintiff's hostile work environment claim. Finally, plaintiff's hostile work environment claim cannot survive threshold dismissal because plaintiff has not alleged conduct that is sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment. Accordingly, plaintiff's Amended Complaint must be dismissed with leave to amend to allow plaintiff one final opportunity to state a valid hostile work environment claim consistent with the principles announced in this Memorandum Opinion.

---

[16] Even assuming, *arguendo*, that (i) the issuance of the marginal performance evaluation, (ii) the pressure to sign the evaluation, and (iii) the denial of the WGI, and (iv) the non-selection for a supervisory role were properly considered as part of plaintiff's hostile work environment claim, the hostile work environment claim still does not survive dismissal. To begin with, these allegations, like the pressure to settle the EEO claim, essentially amount to disagreements with defendant's evaluation of plaintiff's performance; the Amended Complaint contains no allegations suggesting these actions "have anything to do with . . . harassment" based on plaintiff's race, nationality, or religion. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Nor are these allegations pervasive or severe enough to state a plausible hostile work environment claim. All told, the six allegedly discriminatory actions took place over the course of fifteen months and reflect routine differences of opinion or personality conflicts, not harassing conduct "so objectively offensive as to alter the conditions of [plaintiff's] employment." *Mosby-Grant*, 630 F.3d at 335. Accordingly, even considering these time-barred or otherwise unexhausted claims as evidence in support of plaintiff's hostile work environment claim does not save plaintiff's claim.

An appropriate Order will issue.

Alexandria, Virginia
May 15, 2018

_____
T. S. Ellis, III
United States District Judge